IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELSEY S.,[1]

                Plaintiff,

       v.

ANDREW M. SAUL, Commissioner of Social
Security,

                Defendant.

Case No. 6:20-cv-00803-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       Kelsey S. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

Plaintiff's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions

of 42 U.S.C. § 405(g). For the reasons that follow, the Court reverses the Commissioner's

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in May 1992, making her seventeen years old on January 1, 2010, her alleged disability onset date.[2] (Tr. 351.) Plaintiff has an eleventh-grade education and no past

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [she] filed [her] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or.

relevant work experience. (Tr. 292, 314-15, 327, 451.) In her application, Plaintiff alleged

disability due to sciatica, posttraumatic stress disorder ("PTSD"), anxiety, depression, and back

problems. (Tr. 352.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and

on January 24, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. 284, 348-49, 362.) Plaintiff and a vocational expert ("VE") appeared and testified at an

administrative hearing held on May 20, 2019. (Tr. 300-35.) On June 5, 2019, the ALJ issued a

decision denying Plaintiff's application. (Tr. 284-93.) On April 3, 2020, the Appeals Council

denied Plaintiff's request for review, making the ALJ's written decision the final decision of the

Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-

2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

process for determining whether an applicant is disabled within the meaning of the Social

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

---

July 23, 2013) (citation omitted). Plaintiff protectively filed her application on August 8, 2017.
(Tr. 284.)

claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 284-93.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 8, 2017, her protective filing date. (Tr. 286.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[O]besity and depression." (Tr. 286.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 286.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff "can perform simple, routine tasks," and (2) Plaintiff "can tolerate occasional contact with coworkers and supervisors, but no contact with the general public." (Tr. 288.) At step four, the ALJ concluded that Plaintiff has no past work experience. (Tr. 292.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including as a "packing line worker." (Tr. 292.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to fully and fairly develop the record; (2) failing to provide legally sufficient reasons for discounting the opinions of Plaintiff's examining psychologist, Teresa Dobles, Psy.D. ("Dr. Dobles"), and Plaintiff's licensed marriage and family therapist, Alexa Jefferis ("Jefferis"); (3) failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony; and (4) formulating an RFC that did not account for all of Plaintiff's impairments. As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence in the record. Accordingly, the Court reverses the Commissioner's denial of benefits.

## I.    RECORD DEVELOPMENT

### A.    Psychological Assessment

Plaintiff argues that the ALJ failed to fully develop the record because he did obtain the psychological assessment that Paula Belcher, Ph.D. ("Dr. Belcher") completed in March 2017. Plaintiff asserts that the record is incomplete and the ALJ should have held it open because the record refers to Dr. Belcher's assessment, but it was not exhibited. (Pl.'s Opening Br. at 9.) Plaintiff argues that the ALJ's failure to obtain Dr. Belcher's assessment was harmful error. The Court disagrees.

It is well settled that an "ALJ has 'an independent duty to fully and fairly develop the record,' but this duty is triggered only if 'there is ambiguous evidence or . . . the record is inadequate to allow for proper evaluation of the evidence.'" *Harmon v. Saul*, --- F. App'x --- , 2021 WL 981503, at *1 (9th Cir. Mar. 16, 2021) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), and *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)). If the record includes "specific and sufficient evidence" to evaluate the claim, however, the record is neither

ambiguous nor inadequate, and the ALJ does not err by failing to obtain additional records. *See*

*Gurin v. Saul*, 842 F. App'x 45, 48 (9th Cir. 2021) (rejecting the claimant's argument that the

ALJ failed to fully develop the record by not obtaining certain mental health records because

"the record provided specific and sufficient evidence, and the record was therefore neither

ambiguous nor inadequate"); *Harmon*, 2021 WL 981503, at *1 (holding that the ALJ did not err

by failing to obtain records when "the absence of the . . . records did not make the record

ambiguous or inadequate," and noting that the absent records did not prejudice the claimant

because it was "unlikely" the records would have benefitted the claimant in the proceedings).

Here, the ALJ did not commit harmful error by failing to obtain Dr. Belcher's assessment

because the record includes specific and sufficient evidence to allow for proper evaluation of

Plaintiff's claim. Indeed, during the hearing before the ALJ, Plaintiff's counsel explained that the

state agency physicians "appeared" to have reviewed some "evidence from [Plaintiff's] prior

application," namely, Dr. Belcher's psychological assessment. (Tr. 303.) Plaintiff's counsel then

explained that Dr. Belcher "didn't appear [to perform] any sort of formalized testing," but

Dr. Dobles, who examined Plaintiff about one year after Dr. Belcher, performed "a

more . . . comprehensive [psychological] workup . . . [than] Dr. Belcher had done[.]" (Tr. 303, *cf.*

Tr. 668-75, reflecting that Dr. Dobles's diagnostic impressions included several mental health

disorders and a diagnosis of a "[m]ild" intellectual disability based on her testing on January 23

and February 6, 2018). Plaintiff's counsel acknowledged at the hearing that Dr. Belcher's

assessment was "not part of the record," but did not object to its omission, presumably in light of

Dr. Dobles's more comprehensive workup. (Tr. 301, 303; *see also* Pl.'s Opening Br. Ex. C at 1-

6, reflecting that Dr. Belcher's exam consisted of a mental status exam, diagnostic interview, and

limited record review, and Dr. Belcher found that "[f]urther testing [was] required to determine the level of intellectual abilities").

Given that Dr. Dobles provided an opinion favorable to Plaintiff based on a more comprehensive psychological assessment than Dr. Belcher, and that Dr. Dobles performed the intellectual testing that Dr. Belcher recommended, the Court concludes that the record was neither ambiguous nor inadequate because it included specific and sufficient evidence to evaluate Plaintiff's claim. The Court also notes that the inclusion of Dr. Belcher's assessment would not have changed the outcome of this proceeding, and therefore its absence did not prejudice Plaintiff's claim. Accordingly, the ALJ did not commit reversible error.

### B.    Additional Treatment Records

Plaintiff also notes that she submitted additional treatment records to the Appeals Council but they "were not exhibited." (Pl.'s Opening Br. at 10.) Based in part on these records, Plaintiff asserts that "remand may be appropriate for further proceedings to ensure that [her] claim is evaluated in view of her complete medical history." (Pl.'s Opening Br. at 11.) The Court disagrees.

In denying Plaintiff's request for review, the Appeals Council noted that Plaintiff "submitted treatment records from Springfield Family Physicians dated August 24, 2017 to October 2, 2018 . . . and treatment records from Center for Family Development dated June 26, 2017 to November 2, 2018." (Tr. 2.) The Appeals Council "did not exhibit this evidence" because they found that it did "not show a reasonable probability that it would change the outcome of the decision." (*Id.*) However, the Court Transcript Index describes this new evidence as part of the "Medical Evidence of Record" (ECF No. 11-1 at 2, citing Tr. 14-280), and the parties agree that the Court may consider this new evidence to assess whether substantial evidence supports the ALJ's decision. (*See* Pl.'s Opening Br. at 11; Def.'s Br. at 6.) Accordingly,

PAGE 7 – OPINION AND ORDER

the Court will consider Plaintiff's new treatment records herein. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the [claimant's] new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence.").

### C.    Conclusion

For these reasons, the Court concludes that the ALJ did not err by failing to develop the record.

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

Plaintiff filed her application for benefits on August 8, 2017. (Tr. 284.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *appeal filed* No. 21-350006 (9th Cir. Jan. 4, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'"

*Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)

(simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the

medical opinions and explain how they considered the supportability and consistency factors."

*Id.* (simplified). At a minimum, "'this appears to necessitate that an ALJ specifically account for

the legitimate factors of supportability and consistency in addressing the persuasiveness of a

medical opinion.'" *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "'the more

relevant the objective medical evidence and supporting explanations presented and the more

consistent with evidence from other sources, the more persuasive a medical opinion or prior

finding.'" *Id.*

"The ALJ may but is not required to explain how other factors were considered,"

including (1) the "relationship with the claimant (length, purpose, and extent of treatment

relationship; frequency of examination)," (2) "whether there is an examining relationship," (3)

specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or

understanding of the Social Security disability program's policies and evidentiary requirements."

*Id.* The ALJ is, however, "required to explain 'how they considered other secondary medical

factors [if] they find that two or more medical opinions about the same issue are equally

supported and consistent with the record but not identical,'" and courts "must 'continue to

consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations

omitted).[3]

---

[3] The Commissioner argues that the "new regulations reflect important changes
and . . . supersede case law developed under the prior regulatory scheme," and therefore
Plaintiff's reliance on case law developed "under the old regulatory scheme," i.e., "cases
requiring 'clear and convincing' or 'specific and legitimate' reasons to discount a medical
opinion," is "misplaced." (Def.'s Br. at 8-9.) Consistent with its prior decision addressing this

### B.    Dr. Dobles

#### 1.    Dr. Dobles's Opinion

On January 23 and February 6, 2018, the Department of Human Services referred Plaintiff to Dr. Dobles for a psychological evaluation. (Tr. 668-76.) As part of the evaluation, Dr. Dobles conducted a clinical interview, administered tests, and reviewed some of Plaintiff's records, including the psychological assessment that Dr. Belcher performed on March 20, 2017, which resulted in diagnoses of "[b]rief [r]ecurrent [d]epression, alcohol and cannabis abuse disorders with features of PTSD and a rule/out of borderline intellectual functioning." (Tr. 668, 671.)

Dr. Dobles noted that Plaintiff "had two brief panic attacks at the beginning of the session," Plaintiff "cried as she recounted painful memories of abuse," and Plaintiff "appeared to make a good effort on all of the tests." (Tr. 671.) With respect to Plaintiff's scores on a Personality Assessment Inventory ("PAI"), Dr. Dobles noted that there were "indications" in Plaintiff's "responses that she tended to portray herself in a negative light," and thus "there may be some exaggeration of symptoms." (Tr. 673.) Dr. Dobles, however, also stated that (1) "the level of any distortion does not render [Plaintiff's] test results uninterpretable"; (2) "[g]iven the profile tendency previously noted, there may be some overrepresentation of actual psychopathology"; (3) "[a]djustments have been made in the reporting of the PAI profile to reduce the effects of this tendency"; and (4) "[i]n spite of the possibility of any exaggeration,

---

issue, the Court will consider whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of Dr. Dobles's and Jefferis's opinions, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

profile patterns of this type are usually associated with marked distress and severe impairment in functioning." (Tr. 673.)

Dr. Dobles's diagnoses included a "[m]ild" intellectual disability, PTSD, panic disorder, agoraphobia, a mild and recurrent depressive disorder "with anxious distress," and rule out a persecutory type of delusional disorder. (Tr. 675.) Dr. Dobles added that Plaintiff's "level of intellectual functioning falls into the severely impaired range overall"; Plaintiff "demonstrates severely impaired ability on a complex set-shifting attention tasks"; Plaintiff reported "a history of academic difficulties and attending special education classes"; Plaintiff's test scores and history reflect that she meets the criteria for an intellectual disability; Plaintiff "has had multiple hits to the head that may have resulted in head injury further negatively impacting her cognitive functioning"; Plaintiff's "symptoms are consistent with anxiety and affective disorder"; Plaintiff's chronic pain and fatigue can "have a negative impact on cognitive functioning"; it is "likely" that Plaintiff's "current presentation represents her best functioning"; and Plaintiff's symptoms make it "unlikely that she would be able to find and maintain employment in a usual setting." (Tr. 674-75.)

### 2.    Analysis

The ALJ found Dr. Dobles's opinion only "marginally persuasive." (Tr. 291.) The Court agrees with Plaintiff that the ALJ committed harmful error in evaluating Dr. Dobles's opinion.

First, the ALJ found Dr. Dobles's opinion less persuasive because Dr. Dobles "indicated that she reviewed records supplied by [Plaintiff's] attorney, but did not identify those records," which, in the ALJ's view, meant that Dr. Dobles's "opinion may not be based on [a] complete or unbiased review of [Plaintiff's] records." (Tr. 291.) Dr. Dobles's opinion, however, clearly states that she reviewed Dr. Belcher's March 2017 psychological assessment, which included diagnoses (and a recommendation for further testing), as well as records from the Center for

Family Development (i.e., Jefferis's employer), which documented Plaintiff's history of drug and alcohol abuse and participation in outpatient drug treatment and "four years" of psychotherapy. (Tr. 668-69, 671.) Accordingly, the ALJ erred in discounting Dr. Dobles's opinion on this ground.

Second, the ALJ found Dr. Dobles's opinion less persuasive because "she appear[ed] to be employed by [Plaintiff's] disability attorney, which may affect her objectivity." (Tr. 291.) Dr. Dobles's opinion reflects that the "Department of Human Services" referred Plaintiff for a comprehensive psychological evaluation, and Plaintiff's attorney states that she does not employ Dr. Dobles. (*See* Tr. 668; Pl.'s Opening Br. at 17; *see also* Def.'s Br. at 11, suggesting that this alleged error was inconsequential to the ultimate "nondisability determination" and thus was not harmful). Accordingly, the Court finds that the ALJ erred in discounting Dr. Dobles's opinion on this ground.

Third, the ALJ found Dr. Dobles's opinion less persuasive because she "glossed over" Plaintiff's "substance abuse history, although there is significant drug abuse history discussed in [Plaintiff's] treatment notes from Ms. Jefferis [at the Center for Family Development]." (Tr. 291.) As referenced above, a portion Dr. Dobles's opinion is devoted to a discussion regarding her review of Plaintiff's Center for Family Development records and history of drug and alcohol abuse. (*See* Tr. 669.) Additionally, the ALJ acknowledged that it did "not appear that any [drug] use/abuse . . . [was] currently an active problem for the claimant." (Tr. 291.) The ALJ therefore erred in discounting Dr. Dobles's opinion on this ground.

Fourth, the ALJ found Dr. Dobles's opinion less persuasive because she "noted that 'there may be some exaggeration of symptoms' and 'there may be some overrepresentation of actual psychopathology.'" (Tr. 291.) The ALJ explained that Plaintiff's "potential exaggeration

may have impacted the accuracy of Dr. Dobles's assessment," which is "particularly important in the realm of mental health assessments, where conclusions may be highly dependent on a subject's self-reported symptoms." (Tr. 291.) The ALJ's conclusion is not supported by the record.

In *David D. v. Saul*, 405 F. Supp. 3d 868, 882 (D. Or. 2019), the district court addressed a situation nearly identical to the one presented here. In that case, two psychologists administered PAIs and noted that the claimant's "PAIs indicated some possible exaggeration." *Id.* However, "each [psychologist], after conducting other objective tests, reviewing medical records, and conducting interviews . . . , reached their opinions despite any possible exaggeration in the PAIs." *Id.* One of the psychologists added that "'[t]his pattern does not necessarily indicate a level of distortion that would render the test results uninterpretable.'" *Id.* The district court held that the ALJ erred in discounting a medical opinion based on the psychologists' statements regarding evidence of exaggeration, noting that the psychologists "did not ignore the potential exaggeration in the PAI, but expressly acknowledged it and found it not to overcome the other evidence in forming their opinions." *Id.* at 883.

Similarly here, Dr. Dobles did not ignore the potential exaggeration in Plaintiff's PAI. Rather, Dr. Dobles expressly acknowledged the potential exaggeration and found that any potential exaggeration did not overcome the other evidence (i.e., clinical interview, recommended testing, and review of Plaintiff's records) in forming her opinions. (*See* Tr. 673, Dr. Dobles addressed potential exaggeration, but added that "the level of any distortion does not render the test results uninterpretable," that "[a]djustments have been made in the reporting of the PAI profile to reduce the effects of this tendency," and that "[i]n spite of the possibility of any exaggeration, profile patterns of this type are usually associated with marked distress and

severe impairment in functioning"). Accordingly, the ALJ erred in discounting Dr. Dobles's

opinion based on her statements regarding potential exaggeration because Dr. Dobles

acknowledged and accounted for that issue in forming her opinion.

Finally, the ALJ found Dr. Dobles's opinion less persuasive based on Plaintiff's reported

activities. (Tr. 291.) Specifically, the ALJ determined that Dr. Dobles's opinion was

"contradicted by" Plaintiff's reports that she "attends college classes to get her General

Equivalency Diploma, babysits her friends' kids, and is the sole caregiver for her own children

and manager of their household." (*Id.*) The Court finds the ALJ's reliance on these activities

misplaced, and therefore concludes that the ALJ erred in discounting Dr. Dobles's opinion on

this ground.

Plaintiff reported that she attended four weeks of General Equivalency Diploma ("GED")

classes in January and February 2019, which were held on Mondays, Tuesdays, and Wednesdays

and lasted "two or three hours a day." (Tr. 321-22, 669.) Plaintiff, however, also reported she had

an Individualized Education Plan ("IEP") and attended special education classes before dropping

out of high school, and that she was "unable to complete the [GED] classes as her anxiety and

PTSD symptoms interfered with her ability to get herself to school," even though it was "a

supportive environment" with smaller class sizes and "more . . . one-on-one instruction."

(Tr. 314, 322-23, 669; *see also* Tr. 960, January 9, 2019, Plaintiff reported that she needed to

"stop doing treatment" because it was becoming "too much with going to school"; Tr. 924, April

5, 2019, Plaintiff reported that her "low energy" prevented her from making it to school or

appointments). Plaintiff's short-lived and unsuccessful attempt to obtain a GED does not

contradict Dr. Dobles's opinion.

///

As to Plaintiff's babysitting activities, the record includes only a few passing references to babysitting. (*See* Tr. 204, November 2, 2018, Plaintiff presented by phone because her friend was "late to pick up her child [Plaintiff] had agreed to babysit"; Tr. 973, December 14, 2018, Plaintiff presented with "a child whom she was babysitting" before picking "her two children up from school"; Tr. 309, May 20, 2019, Plaintiff testified that she has friends who she has "babysat for"). Notably, however, the record provides no details as to what Plaintiff's babysitting activities involved, and the ALJ did not develop a record regarding the extent to which Plaintiff babysat her friends' children. Absent such details, Plaintiff's babysitting does not rise to the level of "substantial evidence" sufficient to contradict Dr. Dobles's opinion. *See Trevizo v. Berryhill,* 871 F.3d 664, 676 (9th Cir. 2017) ("[T]he record provides no details as to what Trevizo's regular childcare activities involved. The ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo [engage in childcare-related activities.] . . . Absent specific details about Trevizo's childcare responsibilities, those tasks cannot constitute 'substantial evidence' inconsistent with [the physician's] informed opinion[.]").

The final activity on which the ALJ relied in discounting Dr. Dobles's opinion was Plaintiff's ability to serve as the "sole caregiver for her own children and manager of their household." (Tr. 291.) This activity alone is not inconsistent with Dr. Dobles's opinion. On the contrary, the record reflects that Plaintiff receives weekly support from a peer support specialist who helps her with grocery shopping and other normal activities of daily living, and that the Department of Human Services has received "five or six" complaints concerning Plaintiff's children, although Plaintiff testified that the complaints were "false," "closed out," and not based on neglecting or failing to care for her children. (Tr. 311, 325.) Nevertheless, this history and

required level of support is consistent with Dr. Dobles's opinion. Accordingly, the ALJ erred in discounting Dr. Dobles's based on Plaintiff's reported activities.

For these reasons, the Court concludes that the ALJ erred in discounting Dr. Dobles's opinion.[4]

### C.    Jefferis

#### 1.    Jefferis's Opinion

Jefferis, a licensed marriage and family therapist, completed a medical source statement on April 9, 2019. (Tr. 1010-17.) Jefferis reported that she has treated Plaintiff for over five years and has observed Plaintiff exhibit "a variety of symptoms indicative of depression, anxiety, and trauma," including "periods often lasting for 2 weeks or more of low mood, overwhelming sadness, fatigue, difficulty getting out of bed or leaving her home, poor hygiene, suicidal ideation, and feelings of despair and hopelessness." (Tr. 1010.) Jefferis also reported that she has observed Plaintiff "exhibit a sensitivity to actual or perceived judgment or threat coming from others," and that Plaintiff "has the tendency to respond with a high degree of reactive emotional distress (i.e., fight or flight behavior)." (*Id.*) Jefferis added that "[d]uring heightened anxiety or depression, [she] has observed that [Plaintiff] tends to cancel or not show up to her scheduled therapy appointments." (*Id.*) Based on Plaintiff's symptoms and life stressors (e.g., being a single parent without "consistent family support, etc."), Jefferis concluded that Plaintiff is "highly unlikely to maintain the level of professionalism and composure expected by employers in working with the public," and that Plaintiff will experience "significant" difficulty

---

[4] Based on this finding, the Court agrees with Plaintiff that the ALJ failed to formulate an RFC that accounts for all of Plaintiff's impairments, including, but not limited to, Dr. Dobles's diagnoses of a mild intellectual disability, agoraphobia, PTSD, and a panic disorder.

"maintain[ing] a full-time job without special accommodations or excessive [work] absences[.]" (Tr. 1010-11.)

Jefferis also completed a form addressing Plaintiff's work-related limitations. (Tr. 1015-17.) Jefferis rated Plaintiff as markedly limited (i.e., "a serious limitation" that reflects "a substantial loss in the ability to effectively function" in the area) in several categories, including the ability to interact appropriately with supervisors, co-workers, and the general public. (Tr. 1015-16.) Jefferis added that Plaintiff would miss work more than four times a month. (Tr. 1017; *see also* Tr. 328-29, missing two days of work or more per month precludes gainful employment).

## 2.    Analysis

As an initial matter, the ALJ found Jefferis's opinion "not persuasive because it is not consistent with [Plaintiff's] activities." (Tr. 291, citing Tr. 1010-17, Jefferis's medical opinion). As discussed above, the ALJ's reliance on Plaintiff's reported activities was misplaced. Accordingly, those activities do not constitute substantial evidence inconsistent with Jefferis's opinion.

The ALJ also found Jefferis's opinion "not persuasive" because Jefferis "justifie[d] her conclusions with the statement that [Plaintiff] misses appointments when her symptoms act up," but failed to mention "many of the cancellations" were due to Plaintiff's "attendance at GED classes." (Tr. 292.) The ALJ may be referring to a treatment record from January 9, 2019, which reflects that Plaintiff called Jefferis's office and left a message stating that she "[w]ould like to continue seeing . . . Jefferis every week on Friday" but believed that she needed to "stop doing [group] treatment" because of her GED classes. (Tr. 960; *see also* Tr. 957, Plaintiff reported that she was in school and "unable to attend groups" but would continue with her personal support specialist and "mental health therapy"). Although Plaintiff's cancellations in early 2019 may

PAGE 17 – OPINION AND ORDER

have been due to being a single parent overwhelmed by mental health symptoms and the demands of pursuing treatment and GED classes at the same time, the record reflects that Plaintiff missed many appointments over the years and that Jefferis's observation was based on a five-year treatment relationship. (*See* Tr. 924, April 5, 2019, Jefferis noted that Plaintiff reported suffering from "days of low energy," which prevented her from attending school or appointments; Tr. 965, 967, December 21 and December 28, 2018, Plaintiff missed sessions "due to being sick"; *see also* Tr. 540, June 30, 2016, Plaintiff was discharged from physical therapy due to "consistent no shows"; Tr. 551, February 2, 2017, a physical therapy clinic reported that Plaintiff has "a history of cancelling without notice and not showing for her scheduled appointments").

Given the evidence above, the Court finds that Jefferis's failure to mention the GED class-related absences does not constitute "substantial evidence" inconsistent with her opinion. *Cf. Niemi v. Saul*, 829 F. App'x 831, 833 (9th Cir. 2020) (noting that it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation," but distinguishing that particular case because there was "no evidence in the record" that her failure to pursue treatment was "at least in part a result of her psychiatric issues") (simplified).

Finally, the ALJ found Jefferis's opinion "not persuasive" because it is "not supported by [Plaintiff's] treatment history, which includes infrequent counseling for less than a year, no emergency psychiatric treatment, limited use of psychiatric medications, and mostly benign mental status examination results from counselors and other care providers." (Tr. 292.) Contrary to the ALJ's finding, the record (including the additional record evidence submitted to the Appeals Council) reflects that Plaintiff engaged in frequent counseling throughout the relevant

period. (*See* Pl.'s Opening Br. at 24, collecting cites that reflect Plaintiff's frequent treatment). The record also reflects that Plaintiff took clonazepam and, at one point, reported that she could not "live without" the medication because it was the only one that "helps her." (Tr. 235, 238, 268, October 17, 2017, August 22 and October 2, 2018, listing clonazepam on the current medication list; Tr. 625-26, describing Plaintiff's reports on the effectiveness of clonazepam).

Furthermore, it is not clear how a lack of emergency psychiatric treatment undermines Jefferis's opinion, and the Commissioner did respond to Plaintiff's argument that a lack of psychiatric hospitalization is irrelevant. *See David D.*, 405 F. Supp. 3d at 881 ("The ALJ did not explain why psychiatric hospitalization was necessary for any of the discounted medical opinions to be [found] more [persuasive]. The Commissioner did not respond to Plaintiff's argument that a lack of psychiatric hospitalizations is not a legitimate reason to discount a medical provider's opinion. . . . When a plaintiff has received mental health treatment, courts regularly reject a lack of psychiatric hospitalization as a [legally sufficient] reason to discount a medical provider's opinion.").

The only other conflicting evidence the ALJ cited in discounting Jefferis's opinion is Plaintiff's "mostly benign mental status examination results." (Tr. 292.) The ALJ did not cite any records in support of this finding. (*See* Tr. 292.) Nevertheless, given the other errors the ALJ committed in evaluating Jefferis's opinion and Dr. Dobles's comprehensive psychological evaluation and test results, and the consistency between Dr. Dobles's and Jefferis's opinions, the Court finds that the ALJ's discounting of Jefferis's opinion is not supported by substantial evidence.

///

///

III.     **PLAINTIFF'S SYMPTOM TESTIMONY**

A.     **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo*, 871 F.3d at 678. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

B.     **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 289, the ALJ determined that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard here.

The Commissioner argues that the ALJ provided two clear and convincing reasons for discounting Plaintiff's testimony. (*See* Def.'s Br. at 4-7.) First, the Commissioner argues that the ALJ "compared" Plaintiff's activities "to her subjective complaints and found inconsistencies." (Def.'s Br. at 7.) The Commissioner asserts that the ALJ's reliance on Plaintiff's activities was reasonable because her activities "illustrated she was not as limited as she claimed." (Def.'s Br. at 5.) The Court disagrees.

In discounting Plaintiff's testimony, the ALJ relied largely on the same activities that he cited in discounting Dr. Dobles's opinion. (*See* Tr. 290-91, citing Plaintiff's ability to babysit, care for her children, and attend GED classes). As explained above, the ALJ's reliance on Plaintiff's activities was misplaced. Based on those same reasons, the Court concludes that Plaintiff's activities do not constitute a clear and convincing reason for discounting her symptom testimony.

Second, the Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony based on a lack of objective support in the medical record (i.e., "mostly unremarkable" back x-rays and normal findings on mental status examinations). (*See* Def.'s Br. at 4-7.) The ALJ's reliance on a lack of objective support was misplaced given the errors he committed in rejecting the opinions from Plaintiff's long-time treating provider and the examining psychologist who administered tests and completed a comprehensive assessment. However, even if the objective medical evidence is inconsistent with Plaintiff's testimony, the ALJ may not rely

on a lack of objective medical evidence as the sole reason to discredit Plaintiff's testimony. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that "[a] lack of objective medical evidence cannot be the sole reason to discredit claimant testimony" (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005))); *Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1282, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony." (citing *Burch*, 400 F.3d at 680)).

Accordingly, the Court concludes that the ALJ erred in discounting Plaintiff's symptom testimony.

## IV.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to

remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

**B.    Analysis**

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is appropriate.

First, the Court finds that the record has been fully developed. It includes several years of treatment notes (including the new evidence Plaintiff provided to the Appeals Council), Plaintiff's testimony about her symptoms and limitations, and opinions from a long-time treating provider and an examining psychologist who performed intellectual testing and offered the most comprehensive assessment of Plaintiff's impairments. The ALJ also asked the VE a hypothetical question that addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 328-29, the VE testified that a worker could not sustain competitive employment if she missed "work two days per month or more"; *cf.* Tr. 1017, Jefferis opined that Plaintiff would miss "[m]ore than 4 days per month"; *see also* Tr. 672, 674, Dr. Dobles opined that Plaintiff meets the criteria for an intellectual disability, Plaintiff "would be expected to have difficulty working in a regular job setting," Plaintiff suffered from physical abuse/hits to the head that "may have resulted in head injury further negatively impacting her cognitive functioning," and it is "unlikely" that Plaintiff "would be able to find and maintaining employment in a usual setting").

The Commissioner argues that further proceedings are necessary based on "factual issues," and because Dr. Dobles acknowledged potential exaggeration in the PAI and Plaintiff's activities create serious doubt about whether she is disabled. (Def.'s Br. at 16.) The Court disagrees. The Commissioner does not identify the factual issues that need to be resolved, and

the Commissioner's reliance on the PAI and Plaintiff's activities was erroneous, as discussed above.

Furthermore, Ninth Circuit precedent and the objectives of the credit-as-true standard foreclose any argument that a remand for the purpose of allowing the ALJ to have a "mulligan" qualifies as a remand for a "useful purpose":

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, Plaintiff meets the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and Dr. Dobles's and Jefferis's opinions. Accordingly, Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because her impairments would cause her to exceed the customary tolerance for absences.

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of

benefits. *See Weirick v. Saul*, 825 F. App'x 446, 450 (9th Cir. 2020) (remanding for an award of benefits where, as here, an improperly discredited opinion and VE testimony established disability); *Varela v. Saul*, 827 F. App'x 713, 714 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony of [the treating psychologist], the lay witnesses, and [the claimant], would be unable to perform competitive employment").

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 10th day of June, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge